UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: Application of HIGH POINT )
SARL for an Order to Conduct ) Judge Joan H. Lefkow
Discovery for Use in a Foreign Legal ) Magistrate Judge Sidney I. Schenkier
Proceeding Pursuant to 28 U.S.C. § 1782 )
) Case No. 11 C 1892

## MEMORANDUM OPINION AND ORDER

Huawei Technologies Co. Ltd. ("Huawei") has moved to quash a subpoena served by High Point, SARL ("High Point") on March 25, 2011, on a Huawei subsidiary, FutureWei Technologies, Inc. ("FutureWei"), and for a protective order to deny High Point further discovery attempts directed to Huawei (doc. # 13: Huawei Mot. to Quash at 1, 3).[1] High Point argues that the Court should deny Huawei's motion to quash and enter an order compelling Huawei to comply immediately with its subpoena (doc. # 19: High Point Resp. at 1).[2] For the reasons set forth below, we grant Huawei's motion to quash, but deny Huawei's motion for protective order.

I.

Huawei, the moving party, is a "worldwide provider of telecommunications services and equipment" organized under the laws of the People's Republic of China and headquartered, with its principal place of business, in Shenzen, China (doc. # 14: Huawei Mem. at 3). High Point, the respondent, is a Luxembourg private limited liability company (doc. # 1: High Point § 1782 Appl.).

---

[1] On April 22, 2011, this case was referred to this Court to conduct hearings and enter appropriate orders regarding this motion (doc. # 18).

[2] On May 20, 2011, High Point filed a motion for leave to file a sur-reply *instanter* (doc. # 28: High Point Sur-Reply), and on May 23, 2011, Huawei responded with an objection to the sur-reply (doc. # 30: Huawei Objections). On May 26, 2011, this Court held a hearing on the motion and objections. Although the grounds for filing the sur-reply were weak (Huawei's reply did not raise new arguments and High Point's sur-reply essentially repeated its prior arguments), we granted the motion because both parties had an additional bite at the apple, and the Court had already looked at both the objection and the sur-reply (doc. # 31: 5/26/11 order).

On March 18, 2011, High Point filed an *ex parte* application pursuant to 28 U.S.C. § 1782, seeking discovery from "Huawei Technologies Co., Ltd., located at 3601 Algonquin Way, Suite 1000, in Rolling Meadows, Illinois, for use in foreign proceedings, including those captioned *High Point SARL v. KPN B.V.*, Case No. 352544/Dkt. No. HA ZA 09-3931 and *KPN B.V. v. High Point SARL*, Case No. 340411/Dkt. No. HA ZA 09-2048" (High Point § 1782 Appl.). In particular, High Point sought an order directing Huawei to produce documents and submit to deposition testimony in the Northern District of Illinois to support High Point's claims of patent infringement of its European Patent EP 0 522 772 B1 ("the '772 Patent") against KPN B.V. ("KPN") in the above-captioned litigation pending in the District Court for the Hague and the Court of Appeals for the Hague ("the Dutch Proceedings") (doc. #5: Mem. in Supp. of High Point § 1782 Appl. at 1-3). The Dutch Proceedings involve: (1) a suit for preliminary relief brought by High Point against KPN in February 2009 before the President of the Hague District Court, which was denied and is now on appeal; and (2) a suit for invalidity brought by KPN against High Point in October 2009 and a countersuit by High Point for patent infringement, which was denied as to High Point and is on appeal (*Id.* at 3-4; doc. # 6: Decl. of John Allen at ¶ 1).

In its *ex parte* application for discovery, High Point represented to the district court that Huawei resides in or is found in this District, has an ongoing business presence here, and has previously availed itself of the court's jurisdiction to resolve business disputes (High Point Mem. at 2-3, 8). Huawei is not a party to the foreign proceedings (*Id.* at 2, 4). High Point seeks documents and information from Huawei showing the operation of the media gateway products and core network equipment supplied by Huawei to KPN for use in KPN's mobile communications network

in the Netherlands, which network High Point contends violates the patent at issue (Allen Decl. at ¶ 15; Huawei Mem. at 4).

On March 22, 2011, the presiding district judge granted High Point's *ex parte* application to serve a subpoena on Huawei in Rolling Meadows, Illinois, seeking documents and testimony from Huawei (doc. # 9: 3/22/11 Order). On March 25, 2011, High Point issued a subpoena to "Huawei Technologies Co., Ltd." at 3601 Algonquin Way, Suite 1000, in Rolling Meadows, Illinois (Huawei Mem., Ex. A, Subpoena). The subpoena stated that Huawei's deposition would be taken on April 7, 2011, and would include the following topics: the operation and configuration of jitter buffers in the KPN Core Network equipment; the transmission and processing of call traffic in the KPN Core Network equipment; the time alignment and synchronization functions in the KPN Core Network equipment; the manuals and technical specifications for the KPN Core network equipment provided by Huawei; the design, structure, function, configuration, and operation of the KPN Core Network equipment; the High Point Patents, High Point, and the Dutch proceedings, including communications between Huawei and KPN related to the foregoing (Subpoena at 9-10). The subpoena also commanded Huawei to produce, by April 4, 2011: the technical specifications and functional description of the KPN Core Network equipment, training or product manuals showing the operation and configuration of parameters of static and/or dynamic jitter buffers in the KPN Core Network equipment, documents sufficient to identify the KPN Core Network equipment, documents describing the operation of the buffers in the UMG8900 MGW, and documents describing the operation of the buffers used in any MGW installed in the KPN network (*Id.* at 8-9).

28 U.S.C. § 1782(a) provides that upon request made by a foreign or international tribunal or upon the application of any interested person, the "district court of the district in which a person

3

resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal," so long as the discovery order does not violate any "legally applicable privilege." 28 U.S.C. § 1782(a). Section 1782 authorizes, but does not require, federal courts to provide assistance to a foreign party seeking discovery for use in a foreign lawsuit. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). Huawei argues that High Point's Section 1782 subpoena should be quashed on several grounds: (1) Huawei was not served, either directly or indirectly; (2) Huawei does not reside in nor is found in this District as required by Section 1782; (3) the discovery sought is irrelevant and unduly burdensome; and (4) the discovery sought is located in China, not in this District (Huawei Mem. at 1-2, 8, 13). As we find that Huawei was not served, we do not reach Huawei's remaining arguments in support of its motion to quash.

## II.

Huawei contends that High Point failed to effect service on it because service on FutureWei does not constitute service on Huawei (Huawei Mem. at 4). Huawei is not registered to do business in Illinois; does not have a registered agent for service of process in Illinois; does not maintain offices, manufacturing facilities, or production facilities in Illinois; and does not own or lease real property in Illinois (High Point Resp. at 6-7). High Point, by contrast, notes that Huawei lists FutureWei's Rolling Meadows, Illinois address as one of its branch offices (High Point Resp. at 4-5). High Point argues that Huawei so controls FutureWei, that service on FutureWei constituted service on Huawei or that FutureWei was effectively Huawei's agent and thus service was proper (*Id.* at 3).

4

Service on a corporation is accomplished by following the state law where the district court is located or where service is made; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. *In re: Subpoena to Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. 2010) (Gottschall, J.) ("*SynQor*") (citing Fed. R. Civ. P. 45(b)(1); Fed. R. Civ. P. 4(h)). Illinois allows service on a corporation by "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 ILCS § 5/2-204. The party seeking to effectuate service by delivering process to an agent bears the burden of establishing the agency relationship. *SynQor*, 720 F. Supp. 2d at 972.

"[T]here is no bright-line test for determining how much control a foreign parent corporation must have over its domestic subsidiary before the subsidiary will be deemed its agent for purposes of service of process under Illinois law." *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998). Under Illinois law, "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the others." *SynQor*, 720 F. Supp. 2d at 972 (citing *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E.2d 1045, 1054 (Ill. App. Ct. 1986).

However, the party seeking to effectuate service need not show that the subsidiary is an alter ego of the parent or that the two corporations are essentially one. *Chung*, 990 F. Supp. at 584. Rather, Illinois courts consider a number of factors to determine, whether a parent so controls its subsidiary that service of process on the subsidiary constitutes service on the parent: (1) the subsidiary was established and wholly owned by the parent; (2) the parent paid the salaries of the

5

subsidiary's directors; (3) the parent guaranteed the subsidiary's lease; (4) the subsidiary's sole business was the sale of parts for the parent; (5) the parent listed the subsidiary's address in advertisements; (6) the subsidiary existed primarily to promote the sale and distribution of the parent's products; (7) the subsidiary was obligated to repair and sell parts for the parent's products; (8) the subsidiary was contractually required to apprise the parent of all aspects of its business; (9) the subsidiary was authorized to prosecute trademark infringement suits in the parent's name; (10) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering; (11) the parent dominated the subsidiary's board of directors; (12) the subsidiary conducted its board meetings in the domicile of the parent; and (13) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report. *SynQor*, 720 F. Supp. 2d at 973 (citing *Chung*, 990 F. Supp. at 584). No one factor is dispositive. *See Fed. Equip. Corp. v. Puma Indus. Co., Ltd.*, 182 F.R.D. 565, 572 (N.D. Ill. 1998). The subsidiary-parent relationship is insufficient, standing alone, to create the requisite agency relationship, *Id.*, as "[p]arent companies, by their very nature, exercise some control over their subsidiaries." *Apollo Galileo USA P'ship v. Am. Leisure Holdings, Inc.*, No. 07 C 4403, 2009 WL 377381, at *9 (N.D. Ill. Feb. 11, 2009).

In support of their arguments as to the effectiveness of service on Huawei, both parties rely heavily on *SynQor*, a case (albeit not involving Section 1782) in which Huawei filed a motion to quash after it was served with a non-party subpoena at FutureWei's location in Rolling Meadows. High Point and Huawei rely on *SynQor* for both evidence presented in that case (*see, e.g.*, High Point Resp. at 5), and for legal determinations made by Judge Gottschall in that case (*see, e.g.*, Huawei Mem. at 1). In *SynQor*, the district court applied many of the *Chung* factors, and ultimately found

that service at FutureWei's Rolling Meadows facility does not constitute service on Huawei. *SynQor*, 720 F. Supp. 2d at 973-75.

The core facts regarding Huawei and FutureWei are the same here as they were in *SynQor*. The facilities at the address where the subpoena was issued – 3601 Algonquin Way, Suite 1000, in Rolling Meadows, Illinois – are leased and maintained by FutureWei, a wholly-owned subsidiary of Huawei, and the facilities are staffed by FutureWei employees (Huawei Mem. at 1, 4; Ex. C, Decl. of Wenyu Zhou at ¶ 3). FutureWei is a corporation duly organized under the laws of the state of Texas and headquartered in Plano, Texas (Zhou Decl. at ¶ 2). FutureWei has not been granted explicit authority to accept service of a subpoena for or on behalf of Huawei (*Id.* at ¶ 4).

High Point contends that despite the holding in *SynQor* that service on FutureWei did not constitute service on Huawei, "[s]everal additional facts not considered by Judge Gottschall compel the opposite result here" (High Point Resp. at 3). High Point, as the one seeking discovery, bears the burden of proving that the requisite relationship between Huawei and FutureWei exists. *SynQor*, 720 F. Supp. 2d at 974, n.4. We apply the *Chung* factors to the facts and arguments presented by Huawei and High Point to determine, whether in this case, service on FutureWei constitutes service on Huawei.

As the court found in *SynQor*, the first factor weighs in favor of effective service, as FutureWei was formed by and is a wholly owned subsidiary of Huawei. *SynQor*, 720 F. Supp. 2d at 973. But this consideration is not enough, without more, to establish the level of control needed to create the requisite agency relationship. *Apollo Galileo USA*, 2009 WL 377381, at *9.

Neither the court in *SynQor* nor High Point addressed the second, third, or fourth *Chung* factors, and there is still no evidence before the Court on the second and third *Chung* factors.

Huawei, however, now presents evidence that the fourth *Chung* factor weighs in its favor because FutureWei's sole business is *not* the sale of goods for Huawei (Huawei Reply at 4). Huawei has offered unrebutted evidence demonstrating that FutureWei engages in research and development of various products and technologies specific to the North American market, maintains its own intellectual property portfolio with over 300 patents issued and pending, owns at least two trademark registrations, and has three pending trademark applications (Huawei Reply, Ex. A, Decl. of Wenyu Zhou at ¶ 6; Huawei Reply, Ex. B, Decl. of Natalie Swider at ¶¶ 3-6). Further, Huawei has provided unrebutted evidence that Huawei provides an inventory from which FutureWei may purchase any product (at a base price) that it desires to sell in the North America market; sets no contractual quotas for FutureWei's sale of Huawei products; and does not impose pricing controls for FutureWei's sales of Huawei's products (Huawei Reply, Ex. A, Zhou Decl. at ¶ 8). We agree with Huawei that the fourth *Chung* factor favors Huawei's contention that service on FutureWei did not constitute service on Huawei.

Regarding the fifth factor, whether the parent listed the subsidiary's address in advertisements, the *SynQor* court noted that Huawei used FutureWei's various addresses, including the specific Rolling Meadows address at issue here, in its marketing efforts. *SynQor*, 720 F. Supp. 2d at 974. In addition, various press releases refer to Huawei's office in Plano, Texas, which is in fact an office of FutureWei, and Huawei's website refers to several FutureWei offices as "Huawei North America." *Id.* Moreover, the sign on the door of the Rolling Meadows office says Huawei, not FutureWei (High Point Resp. at 5; Ex. N: Decl. of Steve LaRocco at ¶ 3). Although, as Huawei notes, that fact alone does not grant jurisdiction over the parent (Huawei Reply at 9), it nonetheless is a *Chung* factor that weighs in favor of High Point's position.

The *SynQor* court next turned to the sixth *Chung* factor: whether FutureWei existed "primarily to promote the sale and distribution" of Huawei's products. The district court looked to press releases pertaining to Huawei's establishment of FutureWei that suggested that FutureWei's purpose was, at least in part, to promote the sale and distribution of Huawei's products. *SynQor*, 720 F. Supp. 2d at 974. In the press releases, Huawei represented that it had a growing presence in North America and served its customers through North American offices, which were actually FutureWei's offices. *Id.* In *SynQor*, the party seeking service also had produced evidence that the entry of FutureWei's web site into a web browser automatically redirected the user to a site for "Huawei North America." *Id.* While High Point does not attach this evidence, High Point purports to include the evidence presented in *SynQor* (*see* High Point Resp. at 5), and Huawei does not contest our consideration of this evidence. Even considering this evidence, however, we agree with the court in *SynQor* that while Huawei may have advertised without distinction between itself and FutureWei, FutureWei does not deal exclusively in Huawei's products. *SynQor*, 720 F. Supp. 2d at 974. High Point has offered no evidence to the contrary. Moreover, Huawei has presented additional evidence in this case – as noted above under the discussion of the fourth *Chung* factor – that FutureWei has freedom to sell products of other companies (Huawei Reply at 4). This factor favors Huawei's position.

Next, as was true with the party seeking discovery in *SynQor*, in this case High Point has not presented evidence as to the seventh *Chung* factor, that FutureWei was "obligated" to repair and sell parts for Huawei's products. *See SynQor*, 720 F. Supp. 2d at 974. To the contrary, Huawei has provided additional evidence that FutureWei is not required to sell certain products or provide certain services dictated by Huawei. "As part of its own sales agreements with its customers,

9

FutureWei provides service for any product, including any Huawei product, it sells, but FutureWei is under no obligation to provide service for Huawei products sold by any party other than FutureWei" (Huawei Reply, Ex. A, Zhou Decl. at ¶ 9). In fact, FutureWei outsources the repairs of products it sells, such as handsets and modems, to a service provider of FutureWei's choice (*Id.* at ¶ 10). Thus, the evidence shows that the seventh *Chung* factor favors Huawei's position that service on FutureWei did not constitute service on Huawei.

In *SynQor*, the party seeking discovery from Huawei provided no evidence that the eighth *Chung* factor weighed in its favor. *SynQor*, 720 F. Supp. 2d at 974. High Point contends that unlike in *SynQor*, it has presented evidence as to the eighth factor – that FutureWei is contractually required to apprise Huawei of all aspects of its business. High Point points to Huawei's Code of Business Conduct, which, in part, states that Huawei's Trade Compliance Office is "empowered to veto questionable transactions" (High Point Resp. at 4; Ex. K). While indeed the Code on its face purports to apply to subsidiaries such as FutureWei (*Id.*), High Point has offered no evidence of how the Code is implemented, or even if FutureWei is involved in the export transactions covered by the Code of Business Conduct. Moreover, Huawei provides a declaration by Mr. Zhou that FutureWei is *not* contractually required to apprise Huawei of all aspects of its business or obtain Huawei's approval or consent for all research and development projects, domestic sales agreements, or service offerings (Huawei Reply, Ex. A, Zhou Decl. at ¶ 11). Accordingly, on balance, the evidence on this factor is inconclusive, and we do not find that it weighs in High Point's (or in Huawei's) favor.

The *SynQor* court did not address the ninth *Chung* factor, whether the subsidiary was authorized to prosecute trademark infringement suits in the parent's name. High Point presents no evidence that FutureWei is authorized to prosecute such suits in Huawei's name; by contrast, Huawei

presents a declaration that FutureWei is not authorized to prosecute any lawsuits on Huawei's behalf (Huawei Reply at 6; Ex. D: Decl. of Ding Jianxin at ¶ 3). Nevertheless, High Point argues that the fact that Huawei owns the U.S. trademark registration for FutureWei and prosecutes trademark applications on the mark shows that Huawei controls the name, brand, and products of FutureWei (High Point Resp. at 3-4). This assumes too much. While Huawei is responsible for ensuring the quality of goods and services covered by the FutureWei mark (*see* Huawei Reply at 6-7), Huawei's ownership of the mark does not show that it *controls* FutureWei's products and brand. Thus, the ninth factor does not weigh in High Point's favor.

The *SynQor* court also did not address the tenth *Chung* factor, whether the parent controls the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering. High Point contends that it has presented evidence of this factor with "Exhibit F" to an equipment purchase agreement between FutureWei and Cricket Communications ("Cricket")[3] (High Point Resp. at 4-5). In Exhibit F to the agreement, the "vendor's headquarters" is listed as Shenzhen, China (*Id.*, Ex. M: Cricket Agreement, Ex. F). High Point argues that this shows that Huawei in China is ultimately responsible for providing support to Cricket under the contract, and that by extension, Huawei must be seen as controlling FutureWei (High Point Resp. at 4-5). We disagree. As Huawei points out, the language in the body of the contract defines FutureWei as the "Vendor" (Huawei Reply at 8 (citing High Point Resp., Ex. L: Cricket Agreement)). In addition, the express performance obligations rest on FutureWei, and the contact information is for FutureWei in the United States, not Huawei (*Id.*). The "additional evidence" provided by High Point – the Cricket

---

[3] Although in its response, High Point states that this agreement is between FutureWei and Leap Wireless, the agreement shows the other party as Cricket Communications, and this is confirmed in Huawei's reply and High Point's sur-reply (*see* Huawei Reply at 8; High Point Sur-Reply at 5).

Agreement – does not support the proposition that Huawei controls FutureWei; if anything, the evidence weighs in favor of the proposition that service on FutureWei was not service on Huawei.

The *SynQor* court also did not address the eleventh factor, whether Huawei dominates the FutureWei's board of directors. High Point argues that it has offered evidence of common officers and directors between Huawei and FutureWei that was not present in the *SynQor* case (High Point Resp. at 3). High Point attaches an "open letter" posted on Huawei's website, which was intended to rebut concerns by the Committee on Foreign Investment in the United States ("CFIUS") regarding FutureWei's pending acquisition of 3Leaf Systems (*Id.*; Ex. A). High Point contends that the letter shows that Ken Hu is the Chairman of FutureWei and the Deputy Chairman of Huawei (*Id.*). In fact, the letterhead states that Ken Hu is the Chairman of Huawei Technologies USA, which Huawei's evidence indicates is a separate and distinct company (Huawei Reply at 5-6). In addition, Huawei has provided evidence that "FutureWei observes all corporate formalities including governance by its own board of directors that makes decisions independently from Huawei" and files separate income tax returns (Huawei Reply, Ex. A, Zhou Decl. at ¶¶ 3-4).

Moreover, the "CFIUS documents" offered by High Point consist of a press release issued by Senator Jim Webb discussing his and Senator Kyl's national and economic security concerns regarding the acquisition by *Huawei* of 3Leaf Systems, an article in PCWorld discussing that security and oversight concerns dissolved the deal and will lead to ongoing oversight of Huawei's operations in the United States, and a three-year old article from the New York Times discussing the collapse of Huawei's effort to purchase a stake in a different company, 3Com (High Point Resp., Exs. B, C, D). At most, these documents indicate that some members of the government had concerns about the sale of a domestic business to a U.S. subsidiary wholly-owned by a foreign parent, and that these

members of government or the authors of the articles, or both, either mistakenly called FutureWei by its parent's name or considered FutureWei to be the same as Huawei. There is no additional evidence from which this Court may draw a reasonable inference that these documents demonstrate that Huawei *actually* exercises such a high level of control on FutureWei that service on FutureWei should constitute service on Huawei. We find that the CFIUS documents are of minimal relevance to the issue of control in this case.

As no evidence was presented in *SynQor* or here as to the twelfth *Chung* factor (whether the subsidiary conducted its board meetings in the domicile of the parent), we continue on to the thirteenth and final factor, whether FutureWei was listed on a consolidated financial sheet along with Huawei rather than publishing its own annual report. For this factor, High Point relies on *SynQor*, where the court had evidence before it that Huawei produced at least one annual report with an income statement encompassing the earnings of Huawei and its subsidiaries, without distinction between the earnings of Huawei and those of its subsidiaries (High Point Resp. at 5, citing *SynQor*, 720 F. Supp. 2d at 974). We agree that the thirteenth *Chung* factor weighs in High Point's favor.

In *SynQor*, the court determined that the sum of the evidence satisfied four of the thirteen *Chung* factors – apparently the first, fifth, sixth, and thirteenth – and revealed a close relationship between Huawei and FutureWei, but not one that showed that Huawei controlled FutureWei. *SynQor*, 720 F. Supp. 2d at 975. Here, the additional evidence presented by High Point and Huawei casts doubt upon whether even all four of these *Chung* factors are met. Specifically, Huawei provided additional evidence, relevant to the sixth factor, that FutureWei does not exist "primarily" to promote the sale and distribution of Huawei's products. The additional evidence offered as to the fourth, seventh, and tenth *Chung* factors further suggests that FutureWei's sole business was not the

sale of Huawei's parts and FutureWei was not obligated to repair and sell parts for Huawei's products. Moreover, the additional evidence offered by the parties as to the eighth, ninth, tenth, and eleventh *Chung* factors does little or nothing to advance High Point's argument as to the extent of control of Huawei over FutureWei. As in *SynQor*, the sum total of the evidence reveals a close relationship between Huawei and FutureWei; however, High Point has failed to satisfy its burden of showing that Huawei so controlled FutureWei that service on FutureWei was effective on Huawei.

## CONCLUSION

For the reasons set forth above, we grant Huawei's motion to quash (doc. # 13). However, we deny Huawei's motion for a protective order. We cannot predict what evidence may develop in the future, and we will not peremptorily foreclose efforts to seek discovery under Section 1782 based on *new* evidence that High Point may muster. After the decisions in *SynQor* and this case, however, it should be clear to High Point that the kind of evidentiary record presented here and in *SynQor* is not enough to obtain service of process on Huawei by serving FutureWei.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: June 8, 2011**